UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MONESHWAR DHANRAJ,                 :
                                   :
                                   :  04 Civ. 5537 (MBM)
                                   :  OPINION AND ORDER
              Plaintiff,           :
                                   :
      -against-                    :
                                   :
JO ANNE BARNHART, Commissioner     :
of Social Security,               :
                                   :
              Defendant.           :
----------------------------------X

RUTH AXELROD, ESQ.
(Attorney for plaintiff)
Axelrod & Gottlieb
396 Broadway
Suite 902
New York, NY 10013
(212) 431-8073

SUSAN D. BAIRD, ESQ.
(Attorney for defendant)
Assistant United States Attorney
86 Chambers Street
3rd Floor
New York, NY 10007
(212) 637-2713

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiff Moneshwar Dhanraj challenges the Commissioner of Social Security's determination that he was not entitled to Social Security Disability Insurance ("SSD"), because he was not disabled on or before December 31, 2000. Dhanraj seeks review of the Social Security Administration's ("SSA") decision pursuant to 42 U.S.C. § 405(g) (2000). For the reasons set forth below, the SSA's decision is vacated and the case is remanded to the SSA for further proceedings consistent with this opinion.

I.

The following facts are relevant to this appeal. Dhanraj was born on July 26, 1948. (Tr. 20)[1] He completed the 10th grade in Guyana and has not completed any job training, trade school, or vocational school. (Tr. 67, 287) Dhanraj immigrated to the United States in 1969, became a legal resident in 1977, and became a United States citizen in 2000. (Tr. 287) He currently resides in the Bronx. (Tr. 297) He was employed by Arkin Medo, a photographic warehouse, as a shipping clerk and supervisor from 1969 until 1995. (Tr. 288-90) His main responsibilities as a supervisor included using electric and manual pallet jacks, supervising workers, receiving merchandise,

_____

[1] Citations to "Tr." refer to the certified copy of the administrative hearing transcript and medical records provided by the Government pursuant to 42 U.S.C. § 405(g).

1

stacking supplies, and loading and unloading merchandise. (Tr. 61-62) He lifted items that were 80 to 90 pounds at the heaviest and often over 50 pounds. (Tr. 62, 299) In 1995, Arkin Medo laid off Dhanraj because of company downsizing and his absence from work due to medical problems. (Tr. 288-90)

Dhanraj filed an application with the SSA for SSD, alleging that his ability to work is limited by a colostomy due to rectal cancer, a stent implant in his heart due to coronary artery disease, severe back and leg pain due to spinal stenosis and spinal disc bulges, diabetes, hearing loss, blurred vision, and high blood pressure. (Tr. 61) He claims that he is unable to stand for more than 20 minutes, cannot lift even moderately heavy objects, and has pain in his back and legs. (Tr. 61) Dhanraj alleges these conditions began to bother him in July 1996, and he did not work at any time after these conditions appeared. (Tr. 61)

Dhanraj's application for SSD was denied by the SSA Commissioner on December 27, 2001. (Tr. 13, 61) Dhanraj then requested a hearing on his claim before an administrative law judge (the "ALJ"). His hearing was held on August 12, 2003, and, on November 26, 2003, the ALJ denied Dhanraj's claim, finding that he was not disabled prior to December 31, 2000.[2] (Tr. 5, 12-

_____

[2] To qualify for SSD benefits, the claimant "must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.110 to

19) Dhanraj requested review of the ALJ's decision by the SSA Appeals Council. (Tr. 5) The Appeals Council affirmed the ALJ's decision on May 27, 2004. (Tr. 5) He filed a complaint in this court on July 16, 2004. (Tr. 5)

A. Medical History

The only report in Dhanraj's medical record referencing Dhanraj's treatment before December 31, 2000 is an undated report from Dr. Mehta, a neighborhood doctor who treated Dhanraj from October 15, 1987 until August 23, 1999 for diabetes, cellulitis of the right lower leg, and hypertension. (Tr. 111M-111R) Dr. Mehta did not note any complaints of back pain and stated he could not provide the SSA with a medical opinion regarding Dhanraj's current ability to do work-related activities. (Tr. 111-Q) In 1996, Dhanraj had minor ear surgery at Jacobi Hospital to treat hearing loss; the surgery was unsuccessful and he now wears a hearing aid in his right ear. (Tr. 296) In January 2001, Dhanraj told a physician at Jacobi Medical Center that he stopped taking medication prescribed by Dr. Mehta for hypertension and high cholesterol because he was not showing symptoms and was

---

404.130, 404.130 to 404.133; <u>Arnone</u> v. <u>Bowen</u>, 882 F.2d 34, 37 (2d Cir. 1989). To be insured, the claimant must have (1) adequate social security earnings to be 'fully insured,' 20 C.F.R. § 404.110 through § 404.115; and (2) 'disability insured status' in the quarter he became disabled or in a later quarter in which he was disabled, C.F.R § 404.131(a)." <u>Shaw</u> v. <u>Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000). It is uncontested that Dhanraj's last insured date to qualify for SSD was December 31, 2000; thus, he must have been disabled on or before that date to receive SSD.

"feeling good." (Tr. 111D-111E) The cellulitis of Dhanraj's left leg was treated with antibiotics without further complications. (111M-111N)

On January 20-21, 2001, Dhanraj was treated at Jacobi Medical Center for mid-sternal chest pains that awakened him. (Tr. 106) He experienced similar pains two days prior to seeking treatment when he was walking between one and one and one-half miles. (Tr. 106) His medical records from that visit state that he had a "good exercise tolerance" and he "walk[ed] a lot on [a] treadmill for an hour." (Tr. 109) Dhanraj left the hospital on January 22, 2001, despite not finishing his cardiac stress test; he was uninsured and could not afford additional treatment. (Tr. 111-I)

On July 13, 2001, Dhanraj had his initial examination by Dr. Lambert at Montefiore Medical Group. (Tr. 167) Dr. Lambert treated Dhanraj continuously until June 20, 2004. (Tr. 115) Dhanraj stated that he could "walk forever," especially on a treadmill or other flat surface, but he could not stand for more than 10 to 15 minutes or walk up or down hills without his legs becoming tired and shaking. (Tr. 167, 169-70)

At an examination by Dr. Lambert later that month, Dhanraj complained of constipation and reported a family history of colon cancer. (Tr. 167) An October 2001 colonoscopy showed a rectal mass and sigmoid polyp. (Tr. 131) A microbiology analysis

of Dhanraj's colon revealed a cancerous tumor on three of his
eight lymph nodes, which caused Dhanraj to suffer from rectal
bleeding for ten months. (Tr. 113) In December 2001, Dr. Hodgson
performed an anterioposterior resection of Dhanraj's colon, with
a resulting permanent colostomy, followed by courses of radiation
therapy and chemotherapy. (Tr. 145, 147)

In August 2001, Dhanraj underwent angioplasty and had a
distal right coronary artery stent implanted for the treatment of
coronary atherosclerosis; since then he has had infrequent chest
pains. (Tr. 142-44, 301) He also had an MRI of his lumbar spine,
which revealed that he had several disc bulges and a herniated
disc. (Tr. 111-T)

Dr. Hodgson, who treated Dhanraj from October 23, 2001
until February 5, 2002, stated in a form provided to the SSA that
Dhanraj could not lift or carry at all, could stand or walk less
than 2 hours per day, can sit less than six hours per day, cannot
push and pull, and is otherwise "unable to work" and "too weak"
to work. (Tr. 145-49)

Dr. Lambert found that Dhanraj had a limited ability to
lift and carry objects, could stand or walk less than two hours a
day, could sit less then six hours per day, and could not push or
pull due to his cardiac and spine conditions. (Tr. 115-118, 279)
In a letter to the SSA dated August 3, 2003, Dr. Lambert stated
that Dhanraj has had type II diabetes since 1987 as well as a

history of hypertension, hyperlipidemia, chronic onychomycosis, and coronary artery disease. (Tr. 163) Further, Dr. Lambert stated that Dhanraj has "a long history of chronic low back and leg pain since at least 1999. An MRI done also in 2001 confirmed that Mr. Dhanraj has both lumbar spine stenosis as well as multiple bulging and herniated disks." (Tr. 163) Dr. Lambert believed the back pain caused by the spinal stenosis and herniated disks was Dhanraj's "major disability" that also caused pain, numbness, and shaking in his legs. (Tr. 163) As a result of the back and leg pain, Dhanraj could not walk more than 2 blocks, occasionally required a cane to walk, cannot lift, pull, or otherwise handle objects of any weight, and cannot sit or stand for prolonged periods of time. (Tr. 163) Also, although Dhanraj's rectal cancer was in remission, he still suffered daily fatigue and was at increased risk of severe angina and myocardial ischemia if exposed to moderate physical stress or exertion. (Tr. 163) Dr. Lambert found Dhanraj to be "totally and permanently disabled due to the myriad of his underlying medical conditions." (Tr. 163)

On January 30, 2004, after the ALJ decision was filed but before the SSA Appeals Council issued its decision, Dr. Lambert sent another letter to the SSA to clarify his previous letter regarding Dhanraj's medical condition. (Tr. 279) He stated that, although Dhanraj was not under his care until July 2001,

Dhanraj had been experiencing severe low back and leg pain for several years. (Tr. 279) At his initial visit, Dhanraj complained of a significant disability due to back pain since at least 1999; specifically that he could not stand for more than 10 minutes or bend over or lift objects of any weight. (Tr. 279) Dr. Lambert stated, "in my honest medical opinion, he was disabled from his chronic leg pain and spinal stenosis well before December 31, 2000. One must keep in mind that this baseline disability has only worsened since Mr. Dhanraj was under my care." (Tr. 279) Further, Dr. Lambert explained, "it is well known that coronary artery disease and colorectal cancer are chronic disease processes over several years . . . the underlying processes of coronary artery disease and atherosclerosis were probably established at least 10 years prior to his sentinel cardiac events." (Tr. 279) Specifically, "Given his history of diabetes since 1987, his history of hypertension and hyperlipidemia, and his significant family history of both diabetes and coronary artery disease, it is quite reasonable to conclude that Mr. Dhanraj had clinically significant coronary artery disease prior to December 31, 2000." (Tr. 279)

Finally, Dr. Lambert pointed out "we know that colon and rectal cancer involves a series of progressive changes that develop over at least a five to ten year period . . . . Mr. Dhanraj had local metastases to his lymph nodes and perirectal

fat at the time of his surgery in December 2001. Such widespread stage III rectal cancer does not develop overnight, and therefore one can conclude that Mr. Dhanraj had subclinical rectal cancer well before December 31, 2000." (Tr. 279)

In March 2002, Dr. Fauthier reviewed Dhanraj's medical record and found that medical evidence dated before December 31, 2000 was insufficient to establish that a severe impairment existed, noting that none of Dhanraj's medical records from before December 31, 2000 state that he was treated for back pain. (Tr. 152)

B. Administrative Hearing

Dhanraj was represented by Legal Aid paralegal Carmen Burgos at the hearing before ALJ Irving Fliegler. (Tr. 13, 19, 284) Burgos conceded that Dhanraj was not eligible for SSD for disabilities arising after December 31, 2000, but explained that Dhanraj could not seek medical treatment until 2001 because he did not have medical insurance from 1995 through 2000 due to his unemployment. (Tr. 285) Burgos argued that, even though Dhanraj did not receive medical treatment for his alleged disabilities during the time period he was eligible for SSD, Dhanraj was disabled during that time because, when finally treated and diagnosed in 2001, his medical conditions were in an advanced state and had been in existence for some time. (Tr. 285) In response to the argument that the onset date of Dhanraj's

disabilities, particularly his rectal cancer, was at least seven months before he sought medical treatment, the ALJ stated "I don't know if I can make that assumption, ma'am. I'm not a physician. I don't think you can make that assumption either." (Tr. 286)

Both Burgos and the ALJ questioned Dhanraj about his leg shaking and back pain. (Tr. 10, 18-19) Dhanraj stated that both symptoms began 1996 and have worsened over time. (Tr. 299-300) Finally, Dhanraj explained that in 1996 he began suffering from constipation that was later determined to be caused by his rectal cancer. (Tr. 303)

Dhanraj testified that at the time he was laid off in 1995, he was missing work due to illness, including lower back and neck pain, chest pains, shortness of breath, leg trembling while he walked, and frequent constipation. (Tr. 290-291) He saw a neighborhood physician, Dr. Mehta, from 1995 until 1999, because he did not have health insurance. (Tr. 291-92) Dr. Mehta would charge Dhanraj $60 for each visit to provide him with pills for his diabetes and high blood pressure, and Dhanraj would go to Dr. Mehta when he had enough extra money. (Tr. 291-92) Dhanraj did not have enough money to pay for medical care in 2000 and did not see a physician again until 2001, when he became covered under his wife's health insurance as a result of her employment at Montefiore Hospital. (Tr. 293) Dr. Lambert has been Dhanraj's

physician since Dhanraj was able to "join" the Montefiore Medical Clinic in April 2001. (Tr. 295) Dhanraj sees Dr. Lambert once a month. (Tr. 295)

On November 26, 2003, the ALJ denied Dhanraj's claim for SSD. (Tr. 13-19) The ALJ found that on or before December 31, 2000, the last date upon which Dhanraj was eligible for SSD, he did not have a condition that severely impaired him for at least 12 continuous months. (Tr. 18) The ALJ's opinion was based upon his belief that the medical assessment provided by Dr. Mehta was the only medical record upon which he could rely because none of the other records explicitly "refer to the claimant's condition prior to December 31, 2000." (Tr. 17) Further, the ALJ stated that, despite's Dhanraj's testimony that he had lower back and leg pain beginning in 1996, such pain, along with the rectal cancer and coronary artery disease, "were not severe on or before December 31, 2000," because no medical records before December 31, 2000 referenced such conditions or their treatment. (Tr. 18) No other evidence was developed by the ALJ. (Tr. 17) The ALJ concluded "[b]ecause the claimant had no severe impairment by the date he was last insured for benefits, there is no need to continue with the sequential evaluation process." (Tr. 18)

The ALJ does not rely on or refer to Dr. Gauthier's, Dr. Hodgson's, or Dr. Lambert's statements or their medical records relating to Dhanraj. Further, the ALJ drew no inference

regarding the date of onset of Dhanraj's various medical conditions based on the medical evidence provided; he repeatedly stated that the evidence of the medical impairments arose after December 31, 2000, and concluded on that basis alone that none of Dhanraj's medical conditions were severe on or before December 31, 2000. (Tr. 18)

## II.

A court reviewing a denial of Social Security benefits is permitted to set aside the Commissioner's decision if that decision is "based upon legal error or not supported by substantial evidence." Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is defined as "more then a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the reviewing court must conduct its own "plenary review of the administrative record," and must be satisfied that the claimant has had a full and fair hearing, consistent with the "beneficent purposes" of the Social Security Act. Cruz v. Sullivan, 192 F.2d 8, 11 (2d Cir. 1990) (internal quotation marks omitted). "The Act must be liberally applied, for it is a remedial statute intended to

include not exclude." Id.

The Act provides that a person is disabled if he is
unable "to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A). The Act further states that
this impairment must be "of such severity that [the claimant] is
not only unable to do his previous work but cannot, considering
his age, education, and work experience, engage in any other kind
of substantial gainful work which exists in the national economy
. . . ." Id. § 423(d)(2)(A). In making this determination, the
SSA must consider "(1) the objective medical facts; (2) diagnoses
or medical opinions based on such facts; (3) subjective evidence
of pain or disability testified to by the claimant or others; and
(4) the claimant's educational background, age, and work
experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.
1983).

The SSA employs a five-step procedure to evaluate
disability claims. See 20 C.F.R. § 404.1520. This Circuit has
described the procedure as follows:

> First, the Commissioner determines whether
> the claimant is currently performing
> substantial gainful work; if she is, the
> claim is denied without the need to conduct
> further inquiry. Second, if the claimant is
> not performing such work, the Commissioner

must make a finding as to whether the
claimant suffers from a severe impairment
that significantly limits her physical or
mental ability to do basic work activities;
if no such impairment is found, the claim is
denied at that step.  Third, if such an
impairment is found, it is compared to the
impairments listed in the appendix to the
regulations; if the claimant's impairment is
equivalent to one of the listed impairments,
the claimant is considered disabled, and the
claim is granted.  Fourth, if the impairment
is not the equivalent of a listed impairment,
the claimant must show that she cannot
perform her former relevant work; if she does
not make that showing, the claim is denied.
Fifth and finally, if the claimant has shown
that she cannot perform her former relevant
work, the burden then shifts to the
Commissioner to show that the claimant 'still
retains a residual functional capacity to
perform alternative substantial gainful work
which exists in the national economy.'

Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1991) (quoting Bapp

v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).  In this case, it is

uncontested that Dhanraj has not performed substantial gainful

work since 1995.  The ALJ denied Dhanraj's benefits at step two

of the analysis by finding that he did not suffer from a severe

impairment that significantly limited his ability to do basic

work activities during the time he was eligible for SSD.


                              III.

     It is the rule in the Second Circuit that "the ALJ,

unlike a judge in a trial, must himself affirmatively develop the

record" in light of "the essentially non-adversarial nature of a

benefits proceeding." <u>Echevarria</u> v. <u>Secretary of HHS</u>, 685 F.2d 751, 755 (2d Cir. 1982). This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, 20 C.F.R. §§ 404.1572(d)-(f), and exists even when, as here, the claimant is represented by a paralegal. <u>Perez</u> v. <u>Chater</u>, 77 F.3d 41, 47 (2d Cir. 1996). Based on the administrative record, I conclude that the ALJ failed to develop fully the record in Dhanraj's case and erred by not following the procedures set out in Social Security Regulation ("SSR") 83-20 or the Second Circuit's "treating physician rule." Further, the Appeals Council erred by failing to give proper weight to the retrospective diagnosis of a treating physician.

The errors committed by the ALJ and the Appeals Council arise because neither one properly, or even minimally, undertook their legal duty to infer the onset date of Dhanraj's alleged disabilities. The ALJ made no attempt to infer the onset date from the available medical records, did not consider the history and symptomatology of the disease process, did not consult a medical advisor to assist him in inferring the onset date, and did not seek additional information from any of Dhanraj's physicians, particularly his treating physician Dr. Lambert.[3]

--------

[3] Dr. Lambert is Dhanraj's treating physician; he diagnosed all of Dhanraj's debilitating medical conditions and has provided him with continuous and regular care from July 13, 2001 through

The only reference the ALJ made to his duty to infer an onset date was to say "I don't know if I can make that assumption, ma'am. I'm not a physician. I don't think you can make that assumption either" in response to Dhanraj's request that the ALJ infer the onset date based on the records of his treating physician, who stated "it is difficult if not impossible for Mr. Dhanraj to engage in any physical work of even minimal exertion for any extended period of time . . . . In my honest medical opinion, he therefore should be considered totally and permanently disabled due to the myriad of his underlying medical conditions." (Tr. 201, 286) Although it should not be necessary to make the obvious explicit, the ALJ's "I'm not a physician" suggests I should; Dr. Lambert, Dhanraj's treating physician, is a physician. The Appeals Council affirmed the ALJ's decision, and, in doing so, not only shirked its duty to infer the onset date of Dhanraj's disability but also ignored a letter sent by Dhanraj's treating physician, which stated Dhanraj was disabled before December 31, 2001. (Tr. 279-80)

First, contrary to the ALJ's opinion, a finding of disability prior to the last date insured need not be based on contemporaneous medical records, instead the ALJ must determine the onset of a disability in accordance with SSR 83-20. See 20 C.F.R. § 422.406(b); Heckler v. Edwards, 465 U.S. 870, 873 n.3

_____

the time Dhanraj's appeal of the ALJ's decision was filed.

15

(1984) (SSR 83-20 is binding on all SSA decision-makers); <u>Manago</u>
v. <u>Barnhart</u>, 321 F. Supp. 2d 559, 569 (E.D.N.Y. 2004) ("[T]he
absence of contemporaneous medical records does not preclude a
finding that claimant was disabled prior to the expiration of
insured status.  Rather, onset of disability may be inferred in
accordance with the criteria set forth in SSR 83-20").

Under SSR 83-20, "[i]n disabilities of nontraumatic
origin, the determination of onset involves consideration of the
applicant's allegations, work history, if any, and the medical
and other evidence concerning impairment severity. The weight to
be given any of the relevant evidence depends on the individual
case." 1983-1991 Soc. Sec. Rep. Ser. 49 (1983).  The starting
point in determining the onset of a disability is the claimant's
statement of when the disability began; additionally, the date
the impairment caused the claimant to stop work is significant in
determining the onset date. <u>Id.</u>  Reports from all medical sources
describing the claimant's examinations and treatment also bear
upon the onset date. <u>Id.</u>  "Determining the proper onset date is
particularly difficult . . . . [I]t will be necessary to infer
the onset date from the medical and other evidence that describe
the history and symptomatology of the disease process.  In
determining the date of onset and disability, the date alleged by
the individual should be used if it is consistent with all the
evidence available." <u>Id.</u>; <u>see</u> <u>also</u> <u>Jones</u> v. <u>Barnhart</u>, No. 04 Civ.

8421, 2006 WL 463954 (S.D.N.Y. Feb. 21, 2006) ("Determining the date of onset of disability is not an exact science, and when an individual is found to be disabled at the time of his application, or at the time of a hearing, it is often necessary to infer when that disability began; that a person is unable to work when examined by a doctor today does not necessarily imply that he was unable to work yesterday."). Finally, in determining the onset date where a disabling impairment is alleged to have occurred prior to the first recorded medical examination, the ALJ should have a medical advisor assist him in evaluating the available medical evidence so as to infer the onset date. SSR 83-20, 1983-1991 Soc. Sec. Rep. Ser. 49 (1983). In refusing to infer the onset date of Dhanraj's disabilities and failing to hire a medical advisor to assist him if he felt unable to determine the onset date, the ALJ violated SSR 83-20.

Thus, it was improper for the ALJ to use the lack of a diagnosis of severe back and leg pain, or any other disabling medical condition, in Dr. Mehta's medical records as a reason for denying Dhanraj's SSD claim. The absence of an opinion from Dr. Mehta as to the onset of any disability does not contradict Dr. Lambert's explicit statement that Dhanraj was disabled. See Rivera v. Sullivan, 923 F.2s 964, 969 (2d Cir. 1991). As the information received by the SSA from Dr. Mehta was inadequate to determine the onset of Dhanraj's disability, the SSA was required

to contact him and arrange for consultive examinations with other medical sources for clarification and supplementation. See 20 C.F.R. § 404.1512(e)(1) (stating that the SSA "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); 20 C.F.R. § 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.").

Nor is it not determinative that Dhanraj did not seek treatment for his conditions between 1999 and 2001. The logic that he must not have been disabled during that time because he did not seek medical attention is troubling, particularly because Dhanraj was uninsured and unable to afford the care required to treat his conditions. As the Second Circuit pointed out, "While it is conceivable that a three-year gap in plaintiff's medical treatment might be part of a more extensive inquiry into whether he was in fact disabled, the fact of this time lapse does not negate the compelling evidence in the record as a whole that plaintiff was completely disabled." Shaw v. Chater, 221 F.3d 126,

133 (2d Cir. 2000) ("It would fly in the face of the plain
purposes of the Social Security Act to deny claimant benefits
because he is too poor . . . ."); see Gamble v. Chater, 68 F.3d
319, 321 (9th Cir. 1995) (citing cases from other circuits)
(holding that disabled claimant cannot be denied benefits for
failing to obtain treatment that he cannot afford); Gordon v.
Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) ("[SSD] and SSI
benefits exist to give financial assistance to disabled persons
because they are without the ability to sustain themselves.").
"Just because plaintiff's disability went untreated does not mean
he was not disabled." Shaw v. Carter, 221 F.3d 126, 133 (2d Cir.
2000).

    Second, the ALJ did not give proper weight to the
medical records and statements provided by Dr Lambert, Dhanraj's
treating physician.  "It is well-established in this circuit that
'the expert opinions of a treating physician as to the existence
of a disability are binding on the fact finder unless
contradicted by substantial evidence to the contrary.'" Bluvband
v. Heckler, 730 F.2d 886, 892 (2d Cir. 1984) (quoting Bastien v.
Califano, 572 F.2d 908, 912 (2d Cir. 1978); 20 C.F.R. §
416.927(d)(2) ("Generally, we give more weight to opinions from
your treating sources . . . [i]f we find that a treating source's
opinion on the issue(s) of the nature and severity of your
impairment(s) is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").  The Second Circuit held in 1993 that the treating physician rule is binding. <u>Schisler</u> v. <u>Sullivan</u>, 3 F.3d 563, 568-69 (2d Cir. 1993).

Further, it is "well-settled that the 'treating physician rule' applies to retrospective diagnoses, those relating to some prior time period during which the diagnosing physician may or may not have been a treating source, as well as to contemporaneous ones." <u>Martinez</u> v. <u>Massanari</u>, 242 F. Supp. 2d 372, 377-78 (S.D.N.Y. 2003) (citing <u>Shaw</u> v. <u>Chater</u>, 221 F.3d 126, 133 (2d Cir. 2000); <u>Perez</u> v. <u>Chater</u>, 77 F.3d 41, 48 (2d Cir. 1996); <u>Wagner</u> v. <u>Secretary of Health and Human Serv.</u>, 906 F.2d 856, 861-62 (2d Cir. 1990)).  The retrospective diagnosis and opinion of a physician who is currently treating a claimant is "entitled to significant weight" even though that physician did not treat the claimant during the relevant period. <u>Martinez</u>, 242 F. Supp. 2d at 377-78 (citing <u>Campbell</u> v. <u>Barnhart</u>, 178 F. Supp. 2d 123, 134-35 (D. Conn. 2001) (quoting <u>Dousewicz</u> v. <u>Harris</u>, 646 F.2d 771, 774 (2d Cir. 1981))).  The Second Circuit stated that "[a] diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment. Such a diagnosis must be evaluated in terms of whether it is predicated upon a medically accepted clinical diagnostic

technique and whether considered in light of the entire record, it establishes the existence of a physical impairment prior to [the relevant time]." Douzewicz, 646 F.2d at 774.

The regulations specify that even when a treating physician's opinion is not deemed controlling, several factors should induce the ALJ to give greater weight to that opinion, including the frequency of examination, the length, nature, and extent of the treating relationship, the supportability of the medical findings, the opinion's consistency with the record, and whether the physician is a specialist in treating the condition in question. 20 C.F.R. §§ 404.1527(d)(2)(i-ii), d(3)-d(5). The regulations specify that ALJs must give "good reasons" for the weight he ascribes to the treating source's opinion, 20 C.F.R. § 416.927(d)(2), and the Second Circuit has held that "failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); see also Shaw, 221 F.3d at 134-35 (remanding case wherein ALJ improperly rejected treating physician's opinion that plaintiff was disabled); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). Further, even where a claimant has the assistance of counsel, an ALJ has an affirmative duty to seek sua sponte additional information from the treating physician, and may not discount that opinion for no reason. Schaal, 134 F.3d at 505; Rosa v. Callahan, 168 F.3d 72,

79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.").

The ALJ gave no weight to either Dr. Lambert's medical records or his 2003 letter, and provided no reason, much less a "good reason" for discounting such medical records; the only explanation the ALJ provided for not considering any medical records other than those of Dr. Mehta is that such records were not dated before December 31, 2000. Under Second Circuit law, including Dousewicz, 646 F.2d at 774, the ALJ was not permitted to discount the testimony of a treating physician for that reason. Nor did the ALJ seek testimony or additional information from Dr. Lambert to determine the onset date of Dhanraj's disabilities, as he had an affirmative duty to do under the law of the Second Circuit. As is evident from the 2004 letter submitted to the Appeals Council by Dr. Lambert, he could have provided such information to the ALJ and should have been asked to do so. There is nothing "overwhelmingly compelling" in the ALJ's evaluation of the medical record that permits the Commissioner to "overcome" Dr. Lambert's otherwise valid medical opinion.

Additionally, the SSA Appeals Council's affirmance of the ALJ's decision without considering Dr. Lambert's January 2004 letter warrants a remand. It is irrelevant for present purposes

that the letter was submitted after the ALJ issued his decision;
it constitutes part of the administrative record for judicial
review, because it was submitted to the Appeals Council and the
Appeals Council denied Dhanraj's appeal. See Perez v. Chater, 77
F.3d 41, 45 (2d Cir. 1996) ("We hold that the new evidence
submitted to the Appeals Council following the ALJ's decision
becomes part of the administrative record for judicial review
when the Appeals Council denies review of the ALJ's decision.  In
promulgating § 404.970(b) and § 416.1470(b), the Secretary
expressly authorized claimants to submit new evidence to the
Appeals Council without a "good cause" requirement.  The only
limitations stated in these rules are that the evidence must be
new and material and that it must relate to the period on or
before the ALJ's decision.")

The Appeals Council did not say that it considered Dr.
Lambert's 2004 letter, which concluded Dhanraj was disabled
before December 31, 2000. (Tr. 279-280)  As discussed above,
under the law of the Second Circuit, the Appeals Council was
required either to give controlling weight to this retrospective
diagnosis, or at the very least provide a "good reason" for not
granting such weight to it.  The Appeals Council, in upholding
the ALJ's decision, gave no weight to Dr. Lambert's 2004 letter
nor did it provide a "good reason" for not giving any weight to
it. (Tr. 281)  This diagnosis is not inconsistent with other

evidence in the record,[4] nor is there "overwhelmingly compelling" non-medical evidence to the contrary. Further, the retrospective diagnosis was supported by "medically acceptable clinical and laboratory diagnostic techniques" including coronary surgery, an MRI of the spine, and a biopsy of Dhanraj's cancerous tumors. See Rivera v. Sullivan, 923 F.2d 964, 968 (2d Cir. 1991).

Therefore, Dhanraj's claim must be remanded to the Commissioner for reconsideration due to the ALJ's failure to develop the administrative record, to properly follow SSR 83-20, or to properly evaluate the retrospective diagnosis provided by the treating physician in determining the onset date of Dhanraj's disabilities, as well as the Appeals Council's failure to properly consider the amended retrospective diagnosis of the treating physician. See Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Parker v. Harris, 626 F.2d 225, 235 (2d

---

[4] Although Dhanraj stated that he could walk on a treadmill on January 20, 2001 (Tr. 109), and that he could walk on a flat surface in July 2001 (Tr. 169-70), does not determine whether he was disabled. There is no mention in the January 20, 2001, medical record of his ability to lift, pain he experiences when standing and sitting, or pain he experiences when walking on an incline. (Tr. 109) In the July 2001 medical record, Dhanraj informed his physician that he could not stand for more than 10 or 15 minutes and could not walk up or down hills without his legs becoming tired and shaking. (Tr. 169-70) Thus, in July he provided information corroborating his diagnosed disabilities and, as explained above, Dhanraj's failure to have all of his medical conditions stated in the January 20, 2001 medical record cannot be taken to mean such disabilities did not exist at the time. See Rivera v. Sullivan, 923 F.2d 964, 968 (2d Cir. 1991). Further, no jobs come to mind that consist solely of walking on a treadmill.

Cir. 1980)("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have . . . remanded to the [Commissioner] for further development of the evidence."); Fernandez v. Sullivan, 809 F. Supp. 226, 228 (S.D.N.Y. 1992).

$\qquad$ *$\qquad$*$\qquad$*

For the reasons set forth above, the case is remanded to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED:

Dated: New York, New York
May 1, 2006

Michael B. Mukasey
U.S. District Judge

25